UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER LEE GOLDEN,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 5:24-CV-5003-ECS<br><br>REPORT AND RECOMMENDATION ON MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE AND MOTION TO DISMISS (DOCS. 1, 20) AND ORDERS REGARDING MOTION TO AMEND (DOC 15) AND MOTIONS FOR DISCOVERY (DOCS. 22, 23, 24) |

**INTRODUCTION**

Petitioner, Christopher Lee Golden, a federal inmate, filed a *pro se* petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1).[1] The pending matter was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and United States District of South Dakota's Local Rule, LR 57.11.

The basis for Golden's § 2255 habeas petition arises from his underlying criminal conviction in the United States District Court for the District of South Dakota. <u>United States v. Christopher Lee Golden</u>, 5:18-CR-50134-JLV. Now pending is a motion by the United States to dismiss Golden's habeas petition without holding an evidentiary hearing. (Doc. 20). Golden opposes the motion

---

[1] The court cites to documents in Golden's civil habeas case by citing the docket number. Documents cited from Golden's underlying criminal case will be cited "CR" followed by the docket number.

1

and seeks to amend his § 2255 motion (Doc. 15) and moves to compel the production of certain evidence. (Docs. 22, 23, and 24).

## FACTUAL BACKGROUND

### I. District Court Proceedings

### A. Pretrial and Trial

On October 23, 2018, an Indictment was filed charging Golden with one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (CR 1). Golden made his initial appearance on October 29, 2018, and requested court-appointed counsel. Attorney Thomas Diggins was appointed to represent Golden. (CR 5, 8 and 13).

After a number of continuances, the case was set for trial in the fall of 2020. (CR 44). On September 18, 2020, the United States noticed its intent to call several expert witness. (CR 45, 46, 47). On September 24, 2020, Mr. Diggins filed a Notice of Expert Witness, designating Daniel R. Meinke as an expert witness, which contained the following summary:

1. *Forensic Analysis:* It is anticipated Daniel R. Meinke will offer opinions on the information he obtained from his forensic examination and Hollie Strand's examination, which will include a discussion about the files found on the drives, including file names, file paths, and dates associated with the files and the significance, or lack thereof, of the same. It is also anticipated he will be present for the testimony of Hollie Strand (see DCD 45), Detective Rodney D. Curtis (see DCD 46), and Lieutenant Clayton Blackwell (see DCD 47), and will offer rebuttal opinions to their testimony, if necessary.

2. *Basis for opinions:* If Mr. Meinke is called to testify, he will base his opinions on his examination and analysis of

the digital media seized by law enforcement agents as
part of the investigation which led to the charges pending
against the Defendant in conjunction with his
experience, expertise, education, and qualifications noted
in his curriculum vitae.

3. *Qualifications:* A copy of Mr. Meinke's Curriculum Vitae
is attached to this notice as Exhibit A.

(CR 51). The United States moved to compel all materials required under

Federal Rule of Evidence 16(b)(1)(C), and moved *in limine* to exclude Mr.

Meinke's testimony on the grounds that Mr. Meinke did not provide a report.

(CR 53, 54). Mr. Diggins filed a response indicated that he intended to call Mr.

Meinke for rebuttal purposes only. The pleading states, "Golden has not

requested a report from Mr. Meinke and has not received one. Mr. Meinke has

acted as a consultant to Golden on issues related to forensic examinations.

Golden intends to have Mr. Meinke present for the testimony of the

government's noticed experts, and intends to call Mr. Meinke to testify only if a

government expert testifies in a manner that is incorrect or misleading. . ." (CR

56).

The trial court granted the United States' motion to compel and held that

in order to testify at trial, Mr. Meinke was required to produce a report of his

intended testimony on or before the close of the next business day. (CR 62). A

trial to the court was held on January 19-21, 2021. (CR 73). Ten witnesses

testified and 48 exhibits were received into evidence. (CR 73, 74). The defense

did not call, or attempt to call, Mr. Meinke at trial. However, Mr. Diggins

requested, and was permitted, to take recesses during the court trial so he

could consult with Mr. Meinke during trial. (CR 107 at p. 83, 102-103, 288). Golden did not testify at trial. (CR 107 at p. 112-113). At the conclusion of the court trial, Golden was found guilty on both counts. (CR 75).

### B. Sentencing

In preparation for sentencing, a draft presentence investigation was prepared and filed with the court. (CR 83). Mr. Diggins filed numerous objections relying, in part, upon the report of Mr. Meinke. (CR 91, 91-1). Mr. Meinke's report concluded, "Based on my detailed analysis of the digital evidence in this case and comparing it with what has already been reported by law enforcement, I conclude the following:

- I believe a more accurate count of images depicting child pornography or child exploitative material to range from 250-290 images. This count takes into account three videos (75 images).

- I do not believe that the two images that depict a nude toddler reach the level of child pornographic material."

(CR 91-1 at p. 8). During the July 8, 2021, sentencing, Mr. Meinke testified on Golden's behalf. (CR 109 at pp. 9-10, 38-53). Golden was sentenced to 97 months custody, 10 years of supervised release, $100 fine to the victim's assistance fund on each count, to run concurrently. (CR 98, 99).

### C. Direct Appeal

Golden timely appealed and was represented on appeal by Rachael Steenholdt, Assistant Federal Public Defender. United States v. Christopher Lee Golden, 44 F.4th 1129 (8th Cir. 2022). He raised the following two issues:

(1) the sufficiency of the evidence and (2) the district court's application of the sentencing guidelines.  Id. at 1132.  The court rejected both of those arguments and affirmed the lower court on August 17, 2022.  Id.  Golden did not appeal to the United States Supreme Court.[2]  This court has reviewed the entire criminal file, including all pleadings, transcripts, and trial exhibits.

### D. Golden's § 2255 Motion

Golden completed his § 2255 motion and he declared under penalty of perjury that his motion was placed in the prison mailing system on January 11, 2024.  The post mark on an accompanying motion for extension of time indicates a January 12, 2024, mailing date. The § 2255 motion and motion for extension of time were filed with the court on January 18, 2024.

### 1. The original motion

In his original § 2255 motion, Golden raised one claim for relief.  He claimed the following:

> Mr. Thomas Diggins, the Federal Public Defender, violated my due process, that is guaranteed under the 5th Amendment.  Mr. Thomas Diggins violated my due process that is guaranteed under the 5th Amendment, by denying me a fair trial, because Mr. Diggins did not comply with Federal Rule of Criminal Procedure 16.  The government said they produced 40,000 pages from their expert.  While Mr. Diggins produced NONE from his expert, Daniel Meinke.  The defense expert Mr. Meinke was not at the trial, nor did he testify in my behalf.  Mr. Meinke did testify at my sentencing to which he stated I broke no Federal Laws.  Because of Mr. Diggins actions and neglect, I've been denied a fair trial and imprisoned.

---

[2] In his § 2255 motion, Golden states "Because of an address error by the Prisons Mailroom, my Supreme Court appeal was late and returned."  Doc. 1 at p. 3.

Doc. 1 at p. 4. Subsequent to the filing of his original motion, Golden filed an "Addendum to the Record" discussing his efforts to obtain discovery "to see if there are more valid grounds to show cause with". (Doc. 7).

Mr. Diggins filed an affidavit with the court regarding his representation of Golden. (Doc. 14). In response to Golden's allegations, Mr. Diggins stated that "Mr. Meinke did not prepare a report regarding his forensic analysis, as he determined it would be incriminating." Id. at p. 2. Mr. Diggins attached email correspondence between himself and Mr. Meinke dated September 11, 2019, discussing whether his testimony would be beneficial to the defense. Id. at p. 4. In the email, Mr. Diggins expressed that he was "trying to convince Golden it is in his best interest to take a plea deal. [Golden] claims he never intentionally downloaded CP and when he saw it he deleted it. With your help I hope to convince him the evidence doesn't support his claims." Id.

### 2. The amended claim

Shortly after receiving Mr. Diggins' affidavit and supporting documentation, Golden filed a "Motion to Amend Based on Newly Discovered Evidence." (Doc. 15). In the motion, Golden states, "I am adding an Ineffective Assistance of Counsel claim, where plea counsel failed to properly advise me regarding the plea. Had I known this, I would have changed my opinion on the viability of going to trial versus accepting a plea bargain." (Doc. 15 at p. 2).

The government now moves to dismiss all of Golden's claims without holding an evidentiary hearing. (Doc. 20, 21). Golden opposes the motion and again seeks discovery. (Docs. 22, 23 and 24).

## DISCUSSION

### I.    Scope and Procedure Applicable to a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343–44 (1974). Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Id. at p. 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and often presenting logistical issues because the underlying criminal records were elsewhere. United States v. Hayman, 342 U.S. 205, 212-16 (1952). Section 2255 resolved these issues by requiring the motion be filed in the sentencing court. Id.

Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see Raymond v. United States, 933 F.3d 988, 991 (8th Cir. 2019) (exemplifying § 2255 may provide relief for "jurisdictional errors, constitutional errors, or errors of law").

"Where the allegation for relief is not based on a violation of a Constitutional or federal statutory right or an assertion that the court was

without jurisdiction, the Supreme Court has read a 'fundamentality' requirement into § 2255." <u>Farrell v. United States</u>, 4:22-cv-04161, 2023 WL 2753239 (D.S.D. Feb. 15, 2023). Relief is only available for those errors which constitute a " 'fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " <u>Id.</u> (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. <u>United States v. Frady</u>, 456 U.S. 152, 158-59, 167-68 (1982); <u>United States v. Darden</u>, 915 F.3d 579, 586 (8th Cir. 2019) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice). However, because appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal, such claims are properly addressed in a 28 U.S.C. § 2255 motion. <u>United States v. Campbell</u>, 764 F.3d 880, 892–93 (8th Cir. 2014); <u>United States v. Lee</u>, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis is required before examining Golden' allegations of constitutionally deficient counsel.

Once a petitioner files a § 2255 motion, he is entitled to an evidentiary hearing on his claim where he alleges facts that, if true, would entitle him to

relief, unless the allegations cannot be accepted as true because "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." <u>Guzman-Ortiz v. United States</u>, 849 F.3d 708, 715 (8th Cir. 2017) (holding no evidentiary hearing was necessary where the petitioner mischaracterized the record in his challenges to his lawyer's representation) (internal citations omitted); <u>see</u> <u>Smith v. United States</u>, 677 F.2d 39, 41 (8th Cir. 1982) (noting conclusory allegations, unsupported by any specific information, are subject to summary dismissal); <u>see also</u> <u>Bryson v. United States</u>, 268 F.3d 560, 562 (8th Cir. 2001) (concluding brief, conclusory allegations that failed to cite to the record were insufficient to support ineffective-assistance claims). An evidentiary hearing is not required every time a § 2255 claim for ineffective assistance of counsel is asserted. <u>Holmes v. United States</u>, 876 F.2d 1545, 1552-53 (11th Cir. 1989). "The court's role at this stage is to determine whether, in light of the government's response, [petitioner's] claims are 'patently frivolous,' 'based upon unsupported generalizations,' or 'affirmatively contradicted by the record.' " <u>Flippo v. United States</u>, 2:20-cv-08001-AKK, 2022 WL 1631974 (N.D. Ala. 2022) (citing <u>Guzman-Ortiz</u>, 849 F.3d at 715).

## II.   Legal Standard for FED R. CIV P. 12(b)(6) Motion to Dismiss

Respondent's Motion to Dismiss is based on FED. R. CIV. P. 12(b)(6), which allows dismissal if Petitioner has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft, 556 U.S. at 678. First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan v. Allain, 478 U.S. 265, 268 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 556 U.S. at 679 (quoting Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has alleged- but has not "show[n]"—that petitioner is entitled to relief. Iqbal, 556 U.S. at 679. A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Id.

### III.   Mr. Golden' Habeas Petition

Golden raises two grounds in his motions to vacate, set aside, or correct his sentence pursuant to 29 U.S.C. § 2255. (Docs. 1 at p. 4; 15). Both grounds assert ineffective assistance of counsel. Id. Mr. Golden's habeas petition initially asserts his counsel was ineffective for failing to call computer forensic expert Daniel Meinke, which resulted in an unfair trial. (Doc. 1 at p.

4). In his amended claim, Golden argues that Mr. Diggins failed to properly advise him regarding plea offers and the risks of proceeding to trial. (Doc. 15 at pp. 1-2). Because Mr. Golden's habeas petition is an ineffective assistance of counsel claim, it is therefore, not subject to procedural default analysis. See Massaro v. United States, 538 U.S. 500 (2003). Accordingly, this court will examine the claims on their merits.

### A. Timeliness of the Claim

The government's position regarding timeliness of the habeas claim is unclear. In the caption of their memorandum, the government states "Golden's motion is untimely." However, in the body of that section, the government concludes that "the one-year time frame to file this action expired on January 19, 2024, and Golden timely filed his § 2255 motion. (Doc. 21 at pp. 3-4).

The court has reviewed Golden's habeas petition and finds it to be timely. Golden was sentenced by the District Court on July 8, 2021, and the judgment was entered on July 14, 2021. (CR 98, 99). He filed a timely appeal to the Eighth Circuit on July 27, 2021. (CR 100). The Eighth Circuit Court of Appeals affirmed the judgment of the District Court on August 17, 2022. (CR 115, 116). Golden's petition for a rehearing was denied on October 21, 2022. Golden did not file an appeal to the Supreme Court of the United States. Golden's conviction become final for purposes of a § 2255 habeas petition on January 19, 2023, i.e. 90 days following the Eighth Circuit Court of Appeal's judgment affirming the District Court. As such, the deadline for filing the

present habeas petition was January 19, 2024.  Golden's petition was timely filed[3] on January 18, 2024.

### B.    Standard of Review for Ineffective Assistance of Counsel Claims

A claim for ineffective assistance of counsel can serve as the basis for a § 2255 motion.  See United States v. Shoulders, No. 5:21-cv-5082, 2022 WL 3912551 (D.S.D. Aug. 31, 2022).  The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel."  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Strickland, 466 U.S. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687–88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the

---

[3] Federal prisoners are afforded the benefit of the "mailbox rule" regarding timely filing of § 2255 petitions.  The § 2255 habeas petition will be deemed "filed" the day it is placed into the prison mailing system.  However, if the prison has a system designed for legal mail, the inmate must use that system to receive the benefit of the mailbox rule.  Rules Governing § 2255 Cases, Rule 3.  Golden certified that his petition was placed into the prison mailing system on January 11, 2024.  (Doc. 1 at p. 7).  The court also notes the post mark date of January 12, 2024, on the envelope containing Golden's motion for extension of time.  (Doc. 2).

defense and affected the judgment. Id. at 691. The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

First, the petitioner must show that counsel's performance was deficient. Id. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. Second, the petitioner must show that the deficient performance prejudiced the defense. Id. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the movant's burden to overcome this presumption, and a movant "cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698. Petitioner " 'faces a heavy burden' to establish ineffective assistance of counsel pursuant to section

2255." <u>Palma-Madrid v. United States</u>, 1:14-cv-1014, 2014 WL 2946265

(D.S.D. June 30, 2014) (quoting <u>DeRoo v. United States</u>, 223 F.3d 919, 925

(8th Cir. 2000); <u>United States v. Apfel</u>, 97 F.3d 1074, 1076 (8th Cir. 1996)).

A petitioner "must identify the acts or omissions of counsel that are

alleged not to have been the result of reasonable professional judgment."

<u>Strickland</u>, 466 U.S. at 690 (holding a mere assertion of counsel's ineffective

performance is insufficient).  Then, the court must determine if, under a

totality of circumstances, the acts or omissions fell "outside the wide range of

professionally competent assistance," not whether counsel's representation

"deviated from the best practices or most common custom."  <u>Winston v.

Boatwright</u>, 649 F.3d 618, 625 (7th Cir. 2011) (quoting <u>Harrington v. Richter</u>,

131 S. Ct. 770, 788 (2011)).

The petitioner must show that "counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687; <u>see also</u> <u>Cullen v. Pinholster</u>,

563 U.S. 170, 189 (2011) (holding that the benchmark in evaluating ineffective

assistance of counsel claims is "whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on

as having produced a just result").  The reasonableness of counsel's

performance is to be evaluated in light of all the circumstances from counsel's

perspective at the time of the alleged error.  <u>Id.</u> at p. 698.

In making that determination, the court should keep in mind that

counsel's function is to make the "adversarial testing process work" in the

particular case. Id. at p. 690. Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, the Supreme Court noted that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (quoting Strickland, 466 U.S. at 691). The Supreme Court held "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

Courts should recognize that judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel rendered adequate assistance and made all significant decisions within the range of reasonable professional judgment. Id. at p. 698. "There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). Once a petitioner has shown deficient performance, he must then affirmatively show prejudice. Strickland, 466 U.S. at pp. 687, 693. A petitioner must show more than that the error complained of had some effect on the outcome. Id. at p. 693. A petitioner must show there is a reasonable probability the results of the proceedings would have been different but for counsel's deficient performance, that is, "a probability sufficient to undermine the confidence in the outcome."

Id. at p. 694; Cullen, 563 U.S. at p. 190. A "reasonable probability" requires a "substantial" likelihood the result would have been different. Allen v. United States, 854 F.3d 428, 432 (8th Cir. 2017).

### C.  Mr. Golden' Ineffective Assistance of Counsel Claims

#### i.  Golden's initial habeas claim

Golden' ineffective assistance of counsel claim contends, "Mr. Thomas Diggins, the Federal Public Defender, violated my due process, that is guaranteed under the 5th Amendment. Mr. Thomas Diggins violated my due process that is guaranteed under the 5th Amendment, by denying me a fair trial, because Mr. Diggins did not comply with Federal Rule of Criminal Procedure 16. The government said they produced 40,000 pages from their expert. While Mr. Diggins produced NONE from his expert, Daniel Meinke. The defense expert Mr. Meinke was not at the trial, nor did he testify in my behalf. Mr. Meinke did testify at my sentencing to which he stated I broke no Federal Laws. Because of Mr. Diggins actions and neglect, I've been denied a fair trial and imprisoned." (Doc. 1 at p. 4).

Mr. Diggins submitted an affidavit stating that on May 29, 2019, he retained a computer forensic expert, Dan Meinke of Computer Forensic Resources, Inc. (Doc. 14 at p. 2). The expert did not prepare a report regarding his forensic analysis as he determined[4] it would incriminate the defendant. Id. Accordingly, Mr. Diggins did not call Mr. Meinke as a witness

---

[4] In an email to Mr. Diggins assessing the validity of a defense, Mr. Meinke stated, "I don't see anything helpful with any testimony from me during your Case in Chief which would require a report." (Doc. 14 at p. 4)

at trial. Golden submits that the failure to have Mr. Meinke prepare a forensic and the failure to call Mr. Meinke as a trial witness on Golden's behalf violated his due process right[5] to a failure trial. (Doc. 1 at p. 4). Golden claims that Mr. Meinke's testified that Golden "broke no federal laws" at the sentencing hearing. Id.

The government argues that Golden's habeas claim should be dismissed because Golden has not shown that Mr. Diggins' performance was deficient in failing to call Meinke as an expert at trial. (Doc. 21 at pp. 8-11). The government correctly points out that Meinke affirmatively testified that Golden's devices possess between 250-290 images of child pornography. (Doc. 21 at p. 9).

The court has reviewed the email from Mr. Meinke to Mr. Diggins, Mr. Meinke's expert report and the sentencing transcript. Upon review of the record, it demonstrates that Mr. Diggins noticed Mr. Meinke as a potential rebuttal expert for trial. However, the district court sustained the government's objection to exclude Mr. Meinke from testifying at the trial because no expert report was prepared and disclosed. Despite sustaining the government's objection, the court allowed additional time for Mr. Meinke to prepare an expert report for Mr. Diggins to provide to the government, which may have allowed Mr. Meinke to testify at trial. Presumably, no report was prepared and provided to the government for the same reasons identified by Mr. Diggins, to-

---

[5] Although Golden characterizes this as a Fifth Amendment due process violation, the substance of the claim falls under a Sixth Amendment ineffective assistance of counsel claim.

wit: the report would have been incriminating. Meinke's expert analysis was that he could not offer anything helpful to the defense at trial. His expert and report and his testimony at sentencing focused on the *amount* and *type* of child pornography images contained on Golden's devices for the purposes of disputing the sentencing guideline calculations.

Golden's argument that if "Mr. Meinke had been allowed to testify at [his] trial, the outcome of the trial would have changed," (Doc. 22 at p. 2), is simply not supported by the record. As discussed *supra*, "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001) (citing Nguyen v. Reynolds, 131 F.3d 1340, 1349 (10th Cir. 1997)). Mr. Diggins' decision to not call Mr. Meinke as a witness during trial is precisely the sort of reasoned strategic decision of counsel that is "virtually unchallengeable." Strickland, 446 U.S. at 690. Because Golden has failed to demonstrate deficient performance by his counsel, the court need not address the second prong of the Strickland analysis, prejudice to the defendant. See Strickland, 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). Even so, Golden also fails

to establish the prejudice prong of the <u>Strickland</u> analysis because his claims are without merit for the reasons stated in this section.

"Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists. The district court is not permitted to make a credibility determination on the affidavits alone." <u>United States v. Sellner</u>, 773 F.3d 927, 929–30 (8th Cir. 2014) (internal quotations omitted). "It may, however, deny an evidentiary hearing if '(1) the [petitioner's] allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" <u>Id.</u> (quoting <u>Thomas v. United States</u>, 737 F.3d 1202, 1206 (8th Cir.2013)).

Golden' allegation that counsel was ineffective for his decision to not call Mr. Meinke as a trial witness constitutes strategic litigation strategy which cannot be characterized as "a deficiency which permeates the entire trial with obvious unfairness." <u>Hughes v. United States</u>, 258 F.3d 453, 457 (6th Cir. 2001). As such, Golden cannot establish deficient performance, and this claim should be denied without an evidentiary hearing.

### ii. Golden's motion to amend his habeas claim

After being served with Mr. Diggins affidavit and supporting documentation, Golden filed a "Motion to Amend Based on Newly Discovered Evidence." (Doc. 15). According to Golden, a conference call with Mr. Meinke occurred during a jail visit between Mr. Diggins and Golden in November of

2019.  Golden asserts that Mr. Meinke affirmed that "[e]verything he [Mr. Golden] said matches with what I found." (Doc. 15 a p. 2).  Golden claims that Mr. Diggins discouraged him from accepting a plea bargain, thus failing to properly advise Golden regarding the plea.  Id.

The government argues that the court should deny Golden's habeas claim, or in the alternative, the government seeks leave to obtain an additional affidavit from Mr. Diggins and file a responsive briefing regarding that claim.

### a.    Whether the amendment is permitted.

Motions to amend are freely granted when justice so requires. FED. R. CIV. P. 15(a).  Leave to amend is denied only if evidence exists "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Roberson v. Hayti Police Dep't., 241 F.3d 992, 995 (8th Cir. 2001) (citing Foman v.Davis, 371 U.S. 178, 182 (1962)); Ingrim v. State Farm Fire & Casualty Co., 249 F.3d 743, 745 (8th Cir. 2001).  Motions to amend should be denied when the amendment would be futile.  Plymourth County, Iowa v. Merscorp, Inc., 774 F.3d 1155, 1160 (8th Cir. 2015); Becker v. Univ. of Neb. at Omaha, 191 F.3d 904, 908 (8th Cir. 1999) (citing Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994)). The party opposing the amendment bears the burden of proving that some reason exists to deny leave to amend.  Roberson, 241 F.3d at 995; Sanders v. Clemco Indus., 823 F.2d 214 (8th Cir. 1987).

Here, Golden wishes to assert an additional claim that Mr. Diggins failed to properly advise him regarding whether to accept a plea or go to trial. The government resists, arguing generally that Golden's argument is unfounded. However, the government cites no case law or specific argument indicating that Mr. Diggins' failure to properly advise Golden regarding a plea offer is futile.

The burden is on the government to demonstrate grounds why Golden should not be allowed to amend. It has failed to carry that burden. The court will permit the amended claim to be further brief by the parties and resolved by the court.

### b.    Whether discovery is permitted.

Golden has submitted numerous motions for discovery as well as outlined his efforts to obtain documents from various organizations. (Docs. 2, 7, 7-1, 22, 23, 24). Most recently, Golden has requested that the court order Mr. Diggins to surrender the case/work file he created including, but not limited to: "All notes, letters, correspondence, plea agreements (to include the Colorado Plea Agreement), E-mails, phone transcripts when Petitioner was in Scottsbluff, Nebraska, and Petitioners note pad from the trial, and copies of the 'green notebook.'" (Doc. 23 at p. 1). In his motion, Golden claims that "there is a discrepancy in what was transcribed from his sentencing hearing and so would respectfully request that he be provided an audio copy of Dan Meinke's testimony at Golden's sentencing[.]" Id. at p. 2. Further, Golden requests the court to issue a subpoena to the Scottsbluff County Jail for "all phone records,

recordings, and transcripts between [Golden] and Thomas Diggins, from the dates of February 01, 2019 through September 30, 2020." (Doc. 24).

Rule 6 of the rules governing section 2255 proceedings provides:

(a) Leave of Court Required.  A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . .

(b) Requesting Discovery.  A party requesting discovery must provide reasons for the request. . . . and must specify any requested documents . . . .

Rules Governing § 2255 Proceedings, Rule 6(a) & (b).

### 1. Phone records

Phone records of conversations between Golden and Mr. Diggins from February 1, 2019, through September 30, 2020, when Golden was incarcerated in Scottsbluff County Jail are reasonably calculated to lead to evidence that may assist the undersigned magistrate judge in assessing the credibility of Golden and Mr. Diggins, as well as, resolving issues regarding the plea agreement and the decision to go to trial.  Golden's motions for discovery are granted in part and denied in part.  The court orders the government to make inquiry of Scottsbluff County Jail to determine whether recordings of Golden's phone conversations with Mr. Diggins and/or his expert Mr. Meinke from February 1, 2019, through September 30, 2020, are available. If they are, the court orders that transcripts of these recording be produced to both parties on or before June 8, 2025.

## 2.  Audio Recordings of Sentencing

Golden has requested an audio copy of Dan Meinke's testimony during sentencing.  He asserts that, "there is a discrepancy in what was transcribed from his sentencing hearing." (Doc. 23 at p. 2).  Local Rule 57.2 provides as follows:

> If a proceeding has been recorded electronically and the electronic recording constitutes the official record, the clerk of court will arrange, upon the request of any party, to have a transcript prepared from the electronic recording. The requesting party will be responsible for any costs associated with producing a transcript in accordance with the directives of the Administrative Office of the United States Courts. **Recordings will not be released to parties or the public.**

United States District of South Dakota's Local Rule, LR 57.2 (emphasis added). No good cause appearing, the motion for audio recordings of the sentencing hearing is denied.

## 3.  Mr. Diggins case/work files

The only remaining issue presented by Golden in his § 2255 claim is whether Mr. Diggins was ineffective in the context of a rejected plea offer.  Any notes, correspondence, email, proposed plea agreements or plea negotiations, or other documents which relate to an assessment of the strength of the government's case or potential defense are reasonably calculated to lead to evidence that may assist the undersigned magistrate judge in assessing the credibility of Golden and Mr. Diggins as well as resolving issues regarding the plea agreement and the decision to go to trial.  Accordingly, the government is ordered to obtain these material, if they exits, from Mr. Diggins and to provide copies of these documents to the respondent on or before June 8, 2025.

**c.    Additional briefing, affidavits and evidentiary hearing.**

Golden has moved the court for an evidentiary hearing. (Doc. 22). As noted above, the court has addressed the merits of Golden's original habeas claim and determined that Golden is not entitled to an evidentiary hearing on that claim.

The court has permitted Golden's to amend his claim alleging ineffective assistance of counsel arising from the failure to properly advise Golden regarding a plea agreement. As outline below, the court is requiring additional affidavits and briefing. The court takes Golden's request for an evidentiary hearing under advisement and will consider the same upon review of the completed briefings.

**CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Respondent's Motion to Dismiss (Doc. 20) be granted in part and taken under advisement in part. The court recommends that Golden's initial habeas claim be denied with prejudice, without an evidentiary hearing. Golden's amended claim is taken under advisement until further briefing is complete. It is further

ORDERED that Golden's motion to amend (Doc. 15) is granted; it is further

ORDERED that Golden's motion for a hearing (Doc. 22) is denied in part, and taken under advisement in part; it is further

ORDERED that Golden's motions for discovery (Doc. 23, 24) are granted in part, and denied in part, consistent with this order; it is further

ORDERED that the United States shall cause to be filed with the court and served on the petitioner a second affidavit on or before June 8, 2025; it is further

ORDERED that Golden shall file a memorandum in support of his amended claim within 30 of receipt of the affidavit of Mr. Diggins; the United States shall file its response no later than 30 days after Golden files his memorandum.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 8th day of May, 2025.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge

25